UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

MICHAEL O'DETTE,

        Plaintiff,                                           Memorandum and Order

                                                                12 Civ. 2680 (ILG) (SMG)

    - against -

NEW YORK STATE UNIFIED
COURT SYSTEM,

        Defendant.
-------------------------------------------------------x

GLASSER, United States District Judge:

      Plaintiff Michael O'Dette ("plaintiff" or "O'Dette") brings this action against New York State Unified Court System ("defendant" or "USC"), alleging violations of Titles I and II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111, et seq. and §§ 12131, et seq. Before the Court is defendant's motion to dismiss plaintiff's claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). For the following reasons, defendant's motion is granted, but plaintiff may file an amended complaint asserting a Title I claim against an individual defendant in his official capacity.

## BACKGROUND

      The following facts are taken from plaintiff's Complaint, which is presumed true for purposes of the pending motion, as well as from documents that are incorporated by reference in the Complaint and documents of which the Court may take judicial notice.

1

Plaintiff is a fifty-four-year-old man who suffers from Tourette's syndrome and obsessive compulsive disorder. Complaint dated May 29, 2012 ("Compl.") ¶¶ 12, 21 (Dkt. No. 1). Tourette's syndrome requires plaintiff to relieve himself of motor and vocal tics once or twice a day by making loud and embarrassing noises and by using profanity. Id. ¶ 18. Plaintiff needs a private place at work where he can release these tics which are exacerbated by stress. Id. ¶¶ 16, 18. Obsessive compulsive disorder causes plaintiff to feel that "things must be done in a certain manner over and over again"; variations cause plaintiff distress and anger. Id. ¶ 19. A psychiatrist diagnosed plaintiff with these disorders in 2006 although plaintiff believes he has suffered from Tourette's syndrome since the age of seven. Id. ¶ 20.

After twenty years of employment in several jobs, in 2000, plaintiff trained as a New York State court officer and subsequently worked for defendant at the Family Court. Id. ¶¶ 22–24, 26. From 2001 until 2009, plaintiff worked for defendant as a senior court officer. Id. ¶¶ 27–28. Except for several temporary assignments, plaintiff was assigned primarily to the courthouse located at 60 Centre Street, which has private areas for him to release his tics when necessary. Id. ¶¶ 28, 67. Until 2009, plaintiff was never subjected to disciplinary charges and received only favorable evaluation reports. Id. ¶ 31. Beginning in 2009, there were several incidents that eventually resulted in his termination.

On April 2, 2009, when Major Gerard Fennell told plaintiff that he was being transferred to the courthouse located at 71 Thomas Street, plaintiff refused to accept the assignment. Id. ¶ 35. The next day, plaintiff told Chief Clerk John Werner and Captain Michael Castellano that he has Tourette's syndrome and that the 71 Thomas Street courthouse, which is much smaller than the 60 Centre Street courthouse, did not have a

private space for him to release his tics. Fennell later told plaintiff that he could remain at the 60 Centre Street courthouse. Id. ¶¶ 36, 68.

On July 8, 2009, plaintiff was working at one of the magnetometers or x-ray machines at the entrance of the 60 Centre Street courthouse with two other court officers to screen visitors for contraband. Id. ¶ 37. Plaintiff finds this assignment the most difficult of a senior court officer's duties. Id. ¶ 59. When it was time for the three officers to rotate their positions at the magnetometer, one officer refused. Plaintiff insisted that they switch and the officer called him a "retard." Plaintiff became stressed and had an "episode," which caused him to yell and curse at the officer. Id. ¶ 38. Subsequently, in September 2009, plaintiff submitted a letter from his psychiatrist to defendant which stated that plaintiff suffers from Tourette's syndrome, explained the disorder, and asked defendant to assign plaintiff to "low stress areas at work." Id. ¶ 62.

On November 5, 2009, plaintiff returned early from his lunch break to the magnetometer at the 60 Centre Street courthouse. One of the on-duty officers, who was positioned as a "pusher" at the magnetometer,[1] demanded that plaintiff replace her so that she could leave for lunch. Because his lunch break was not yet over and because he finds the pusher to be the most stressful of the magnetometer positions, plaintiff refused to replace the officer and chose to wait until an officer needed to be relieved at a different position. Id. ¶¶ 39, 59. When Lieutenant Gerard Schustal phoned the post for unrelated reasons, the officer positioned as pusher complained about plaintiff's conduct. Schustal requested to speak with plaintiff but would not listen when plaintiff tried to explain his conduct. Frustrated and fearing an episode, plaintiff hung up the phone.

---

[1] The Complaint does not define this position.

When Schustal called back, plaintiff became stressed and had an "episode," which caused him to yell and curse at Schustal. Id. ¶ 40.

Plaintiff was subsequently suspended with pay from November 5, 2009 until December 2, 2009. Id. ¶ 41. When plaintiff returned to work on December 2, Fennell told him to report to the 71 Thomas Street courthouse. Id. ¶ 43. Plaintiff requested that a private room be made available to him at that courthouse and was told that he needed to make that request when he arrived there. When plaintiff refused to report there, Captain Castellano demanded his shield and ID card and told him to go home. Id. ¶¶ 44–45.

On December 10, 2009, plaintiff submitted another letter from his psychiatrist to defendant, which again asked defendant to assign plaintiff to low stress work and added that plaintiff requires a private room to release his tics. Id. ¶ 63. On December 14, 2009, plaintiff submitted forms that his psychiatrist had completed at defendant's request. Id. ¶¶ 48–50. That same day, Fennell notified plaintiff in writing that he could not return to work. Id. ¶ 46.

On September 14, 2010, defendant filed disciplinary charges against plaintiff based on the incidents of July 8, 2009; November 5, 2009; and December 2, 2009. Id. ¶ 56. After a disciplinary hearing on March 6, 2012, the Deputy Chief Administrative Judge terminated plaintiff's employment, finding that he yelled and cursed at a co-worker, yelled and cursed at a superior, and refused a superior's order. Id. ¶ 57; Declaration of Shawn Kerby ("Kerby Decl."), Ex. A (Dkt. No. 7).

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on February 1, 2010, and was issued a right to sue letter on February 29, 2012. Compl. ¶¶ 7–8. Plaintiff filed this action on May 29, 2012, alleging violations of Titles I

4

and II of the ADA in that defendant (1) refused to accommodate him by permitting him to remain at the 60 Centre Street courthouse; (2) refused to accommodate him by giving him assignments that were less stressful than working at the magnetometer "[a]t least once or twice a week"; (3) brought him up on "petty infractions" because of his disabilities; and (4) terminated him because of his disabilities. Id. ¶¶ 71–72, 76, 81. Plaintiff seeks monetary damages, a declaratory judgment, and an injunctive order requiring defendant to reinstate him as a senior court officer. Id. at 11.

One month later, on June 29, 2012, plaintiff filed a petition pursuant to Article 78 of New York Civil Practice Law and Rules ("CPLR") in the Supreme Court of New York County against the same defendant as in this action. Kerby Decl., Ex. B. By stipulation of the parties, on July 9, 2012, the petition was transferred to the Appellate Division, First Department. Kerby Decl., Ex. C.

Defendant moved to dismiss the Complaint on July 17, 2012, accompanied by a Memorandum of Law in Support of Motion to Dismiss ("Def.'s Mem."). Dkt. Nos. 6–8. Plaintiff filed a Memorandum of Law in Opposition ("Pl.'s Opp'n") on August 27, 2012. Dkt. No. 9. On September 10, 2012, defendant filed its reply ("Def.'s Reply"). Dkt. No. 11.

## LEGAL STANDARDS FOR MOTIONS TO DISMISS

To defeat a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). In deciding such a motion, the court "may refer to evidence outside the pleadings." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

5

On a motion to dismiss pursuant to Rule 12(b)(6), "although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' is inapplicable to legal conclusions and '[t]hreadbare recitals of the elements of a cause of action, unsupported by mere conclusory statements, do not suffice.'" Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "'[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679). To be sufficient, a complaint not only must include a short, plain statement of the claim showing the pleader is entitled to relief, Fed. R. Civ. P. 8(a), but also "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level. . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). The court may look outside the complaint to consider documents that are incorporated in the complaint by reference and matters of which judicial notice may be taken. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

**DISCUSSION**

**I. Title I Claim**

The Eleventh Amendment bars suits against a state in federal court unless the state has consented to be sued or Congress has abrogated the state's immunity. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99–100 (1984). An "arm of the State," such as the New York State Unified Court System, is immune as well. Gollomp v. Spitzer, 568 F.3d 355, 366–68 (2d Cir. 2009). However, under the

exception of Ex parte Young, 209 U.S. 123 (1908), a plaintiff may avoid Eleventh Amendment immunity by suing a state official in his official capacity for prospective injunctive relief to prevent a continuing violation of federal law. Such a suit is not one against the state, because the official's violation of federal law strips him of his official authority. Pennhurst, 465 U.S. at 102. Although Congress did not abrogate the states' sovereign immunity from suits brought pursuant to Title I of the ADA for monetary damages, the Ex parte Young exception permits Title I suits against state officials for prospective injunctive relief. Bd. of Tr. of Univ. of Ala. v. Garrett, 531 U.S. 356, 360, 374 n.9 (2001); Henrietta D. v. Bloomberg, 331 F.3d 261, 287–88 (2d Cir. 2003).

Defendant moves to dismiss plaintiff's Title I claim, arguing that the Eleventh Amendment bars subject matter jurisdiction. Def.'s Mem. at 9–11. Plaintiff concedes that his claim against defendant is barred, but requests leave to amend his Complaint to name the Deputy Chief Administrative Judge of New York City Courts ("DCAJ") as a defendant so that he may pursue his claim for injunctive relief of reinstatement under Ex parte Young. Pl.'s Opp'n at 9–12.

Under Federal Rule of Civil Procedure 15(a), the court should "freely" give leave to amend "when justice so requires." "In making its determination, the court considers factors such as undue delay, prejudice to the defendants, and futility of the proposed amendments." Hughes v. Anderson, No. CV09-4042 (ADS)(WDW), 2012 WL 3062155, at *3 (E.D.N.Y. May 31, 2012) (citations omitted). "An amendment is futile if the claim would be unable to withstand a Rule 12(b)(6) motion to dismiss." Id. (citation omitted).

At this early stage of the litigation, plaintiff has not unduly delayed in requesting leave to amend and defendant will not be prejudiced by the amendment. However, defendant objects to plaintiff's request as futile for three reasons: (1) plaintiff fails to

7

plead "an ongoing violation of federal law attributable to the DCAJ"; (2) the claim should be dismissed pursuant to the abstention doctrine of Younger v. Harris, 401 U.S. 37 (1971), because plaintiff has commenced a state court proceeding; and (3) plaintiff fails to state a plausible claim for relief. Def.'s Reply at 3–7. Defendant's arguments are unpersuasive.

First, by requesting reinstatement to previous employment, plaintiff implicitly pleads an ongoing violation of federal law as required by Ex parte Young. State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 96 (2d Cir. 2007). While the Complaint does not allege that this violation is "attributable" to the DCAJ, plaintiff would resolve this in his amended complaint by naming the DCAJ as a defendant and specifically alleging that the DCAJ has authority to reinstate plaintiff. See Shipman v. N.Y. State Office of Persons with Dev'l Disabilities, No. 11 Civ. 2780 (GBD)(FM), 2012 WL 1034903, at *3 & n.1 (S.D.N.Y. Mar. 26, 2012). Therefore, plaintiff's requested amendment would not be futile.

Second, Younger abstention, which concerns whether a federal court may interfere with a state court proceeding by enjoining it, is inapposite to this case. Nosik v. Singe, 40 F.3d 592, 595 (2d Cir. 1994). Here, plaintiff has not asked this Court to enjoin a state court proceeding; he has merely filed concurrent actions in state and federal courts. Defendant, in turn, does not move this Court to abstain from enjoining the state court proceeding; it seeks dismissal of the federal action because there is an ongoing state proceeding. See Def.'s Mem. at 14, 18. Therefore, the doctrine of Younger abstention does not render plaintiff's requested amendment futile.

The abstention doctrine articulated in Colorado River Water Conservation Dist. v. United States, which concerns whether a federal court should abstain from deciding a

8

case "due to the presence of a concurrent state proceeding for reasons of wise judicial administration," is more appropriately invoked in this case. 424 U.S. 800, 818 (1976). A federal court may abstain on this basis only in "exceptional" circumstances, id., and must first consider the following factors to determine whether abstention is appropriate:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 100–01 (2d Cir. 2012) (quotation omitted). "Where a Colorado River factor is facially neutral, that is a basis for retaining jurisdiction, not for yielding it." Id. at 101 (internal quotation omitted).

Although neither party has briefed the Court on the multi-factored Colorado River test, it is evident that there are no "exceptional circumstances" or "clearest of justifications" permitting this Court to abstain in this case. Id. (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 (1983)). First, there is no property or res at issue in this litigation, which weighs against abstention. Id. Second, the federal and state forums appear to be equally convenient because they are geographically proximate, which weighs against abstention. Id. Third, there is no risk of piecemeal litigation in this case because the parties are the same in both the state and federal actions, so "resolution in one forum would resolve the claims for all parties." Dalzell Mgmt. Co., Inc. v. Bardonia Plaza, LLC, --- F. Supp. 2d ----, 2013 WL 592672, at *7 (S.D.N.Y. Feb. 15, 2013) (citation omitted). Fourth, plaintiff filed the federal action

9

first and the state action does not appear to have progressed any further than this action. Sun Life Assurance Co. of Canada (U.S.) v. Gruber, No. 05 Civ. 10194 (NRB), 2006 WL 1520524, at *4 (S.D.N.Y. Jun. 1, 2006). Fifth, federal law governs plaintiff's ADA claim, which weighs against abstention. See Woodford Cmty. Action Agency of Greene Cnty., Inc., 239 F.3d 517, 523 (2d Cir. 2001). The final factor is the only one to weigh in favor of abstention: The Court has no reason to believe that the state court will not adequately protect plaintiff's federal rights; indeed, plaintiff's concurrent filing in the state court is evidence of his own confidence in that court. See First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc., 862 F. Supp. 2d 170, 194 (E.D.N.Y. 2012). However, because five of the six factors weigh against Colorado River abstention, the Court will not dismiss this action. See Niagara, 673 F.3d at 104.

As for defendant's third objection to plaintiff's requested amendment, plaintiff states a plausible claim for relief at this stage of the proceedings. Title I of the ADA prohibits an employer from discriminating against an employee "on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination also includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee," unless the employer can "demonstrate that the accommodation would impose an undue hardship on the operation of the business." Id. § 12112(b)(5)(A).

Plaintiff alleges both discriminatory discharge and failure to accommodate. Compl. ¶¶ 71–72, 76, 81. The elements of a prima facie discrimination claim under the

10

ADA are:[2] "(1) [the plaintiff's] employer is subject to the ADA; (2) [the plaintiff] was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001). The elements of a prima facie failure to accommodate claim are: "(1) [the plaintiff] is disabled within the meaning of the ADA; (2) his employer had notice of his disability; (3) he could perform the essential functions of his job with reasonable accommodation; and (4) his employer refused to make such accommodations." Price v. City of New York, 797 F. Supp. 2d 219, 229 (E.D.N.Y. 2011) (citing Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006)).

Defendant argues that plaintiff's requested accommodations would eliminate the essential functions of his job and, therefore, are not reasonable. Def.'s Reply at 7. Although "[a] reasonable accommodation can never involve the elimination of an essential function of a job," Shannon v. New York City Transit Auth., 332 F.3d 95, 100 (2d Cir. 2003) (citation omitted), "the determination of whether a particular modification is 'reasonable' involves a fact-specific, case-by-case inquiry." Staron v. McDonald's Corp., 51 F.3d 353, 356 (2d Cir. 1995). Similarly, determining the essential functions of a job requires "a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice." McMillan v. City of New York, ---- F.3d ----, 2013 WL 779742, at *4 (2d Cir. Mar. 4, 2013) (quoting Borkowski v. Valley

---

[2] At the motion to dismiss stage, a plaintiff's ADA discrimination claim must be "facially plausible and must give fair notice to the defendants of the basis for the claim," but the plaintiff "need not establish a prima facie case." Mohamed v. New York, No. 11-cv-6734 (BSJ), 2012 WL 3104921, at *1 (S.D.N.Y. Jul. 31, 2012) (quotation omitted). However, the elements of a prima facie case "provide an outline of what is necessary to render [the claim] plausible," so courts "consider these elements" to determine whether the complaint survives a motion to dismiss. Pahuja v. Am. Univ. of Antigua, No. 11 Civ. 4607 (PAE), 2012 WL 6592116, at *9 (S.D.N.Y. Dec. 18, 2012) (quotations omitted).

Cent. Sch. Dist., 63 F.3d 131, 140 (2d Cir. 1995)). "All that plaintiffs must do at the motion to dismiss stage is plead the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." Shaywitz v. Am. Bd. of Psychiatry & Neurology, 675 F. Supp. 2d 376, 390 (S.D.N.Y. 2009) (quotation omitted).

At this stage, the Court cannot identify the essential functions of plaintiff's job or determine whether plaintiff's requested accommodations are unreasonable. It is possible that permitting plaintiff to remain at the 60 Centre Street courthouse or transferring him to the 71 Thomas Street courthouse with a designated private area is a reasonable accommodation. It is also possible that occasionally assigning plaintiff to posts other than the magnetometer is a reasonable accommodation. Plaintiff's claim for relief is facially plausible; therefore, amending the Complaint would not be futile.

Accordingly, plaintiff may amend his Complaint by naming a state official as a defendant in this action, but he must specifically allege that this defendant has authority to provide the relief of reinstatement.

## II. Title II Claim

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff brings his Title II claim for the same underlying conduct of employment discrimination as his Title I claim. Defendant seeks to dismiss the Title II claim because only Title I prohibits discrimination by an employer, whereas Title II prohibits discrimination by a public entity. Def.'s Mem. at 11–14. In response, plaintiff urges the Court to "adopt the view" that Title II

encompasses employment discrimination claims and, therefore, plaintiff's claim in this case. Pl.'s Opp'n at 12–17.

While the parties cite conflicting precedents to support their respective positions, since they have briefed the pending motion, the Second Circuit squarely addressed this issue in Mary Jo C. v. New York State and Local Ret. Sys., 707 F.3d 144 (2d Cir. 2013). Based on the ADA's structure and statutory language, the court concluded that an employment discrimination claim is not cognizable under Title II where the defendant employs fifteen or more employees. Id. at 168–72. Because defendant in this case employs more than fifteen employees, Compl. ¶ 10, Mary Jo C. compels dismissal of plaintiff's Title II claim.

## CONCLUSION

For the foregoing reasons, the Court grants defendant's motion to dismiss the Complaint, but plaintiff may file an amended complaint asserting a Title I claim against an individual defendant with authority to reinstate plaintiff.

**SO ORDERED.**

Dated:     Brooklyn, New York
            April 15, 2013

                                                                     /s/
                                            I. Leo Glasser
                                            United States District Judge