UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
MICHAEL O'DETTE,

                Plaintiff,

  - against -

FERN A. FISHER, in her capacity as
Deputy Chief Administrative Judge for the
New York City Courts,

                Defendant.
---------------------------------------------------------x

MEMORANDUM AND ORDER

12 Civ. 2680 (ILG) (SMG)

GLASSER, Senior United States District Judge:

       Plaintiff Michael O'Dette ("O'Dette") brings this action against the Honorable Fern A. Fisher ("Judge Fisher" or "Defendant"), in her capacity as Deputy Chief Administrative Judge for the New York City Courts, alleging violations of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111, et seq. Judge Fisher moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment. For the reasons that follow, the motion is GRANTED.

## BACKGROUND

       The following facts are undisputed, except where noted. O'Dette is a fifty-six-year-old man who suffers from Obsessive Compulsive Disorder ("OCD") and Tourette's Syndrome ("Tourette's"), a neurological disorder characterized by involuntary motor and vocal tics. See Defendant's Local Rule 56.1 Statement of Facts ("D SOF") ¶ 22[1]; Am. Compl. (Dkt. No. 13) ¶ 26. He testified that as a result of his Tourette's, he has the uncontrollable urge to release motor and vocal tics hundreds of

---

[1] Although Judge Fisher "assume[s] that O'Dette has Tourette Syndrome" for purposes of this motion, she nevertheless notes that "it is far from clear that O'Dette has Tourette Syndrome" and that "[O'Dette] has given conflicting accounts of his symptoms. . . ." See Defendant's Memorandum in Support of Motion for Summary Judgment ("Memorandum") at 2.

1

times a day for five to ten minutes at a time. D SOF ¶ 24. When ticcing, he opens and closes his jaw, shrugs his shoulders, waves his hands, jerks his legs, and makes "choo choo" sounds. Id. His verbal tics also "on infrequent occasions" include repeating obscenities—a symptom associated with Tourette's known as coprolalia. See O'Dette Certification (PX 2) ¶ 5; O'Dette Testimony (PX A) at 80:11-16. He testified that his Tourette's and OCD do not interfere with his ability to sleep, make decisions, think, or work. D SOF ¶ 37. Additionally, his expert, Dr. Stephen Reich, opined that his symptomology has never prevented him from "working, being productive, and being independent." Id. ¶ 39.

I. **O'Dette's Employment at the New York Unified Court System**

From 2000 through 2009, O'Dette worked as a New York State Court Officer ("Court Officer"), providing courthouse security services for the New York Unified Court System ("UCS"). His official responsibilities as a Court Officer included providing courtroom security, patrolling the courthouse, maintaining order and control in emergencies, and guarding judicial staff. D SOF ¶¶ 28, 30. From March 2000 through October 2001, he was assigned to the Bronx Family Court. Id. ¶ 3. On November 1, 2001, he became a Senior Court Officer for the Civil Term of the New York County Supreme Court, where he was assigned primarily to the 60 Centre Street courthouse ("60 Centre Street") and temporarily to the 71 Thomas Street courthouse ("71 Thomas Street"). Id. ¶ 3.

At 60 Centre Street, he worked at the X-ray machines and magnetometers (collectively, the "magnetometers"), located at the front and back entrances. Id. ¶ 7. He used empty jury rooms, bathrooms, courtrooms, and judge's robing rooms to release his tics. Id. ¶ 27. On April 2, 2009, his supervisor, Major Gerard Fennell, told him that he

2

was being transferred to 71 Thomas Street, which he knew did not have private areas for him to release his tics. Id. ¶ 4. The next day, in a meeting with Chief Clerk John Werner and Captain Michael Castellano, he disclosed that he had Tourette's and needed a private place to release his tics; this was the first time he shared this information with anyone at the UCS. Id. ¶ 5. His supervisors permitted him to remain assigned to 60 Centre Street. Id. ¶ 6.

## II. Instances of Misconduct

A few months later, he was involved in two episodes in which he loudly cursed in public at another Court Officer while on the job. On July 8, 2009, he screamed "fuck you" repeatedly at Officer Kimberly Moses in the public courthouse lobby after she refused to relieve him as a pusher on the magnetometers and allegedly called him a "retard." D SOF ¶¶ 7-10. On November 5, 2009, he refused Lieutenant Kenneth Schustal's order to relieve another Court Officer at the magnetometers because he believed he was still on his lunch break. Id. ¶¶ 11-15. He screamed "fuck you" repeatedly at Schustal over the phone in the public lobby, and again in a meeting with his supervisors. Id. He alleges that because he has coprolalia, he could not control either cursing incident. Plaintiff's Local Rule 56.1 Statement of Facts ("P SOF") ¶¶ 8, 10, 13, 15.

As a result of these incidents, on November 5, 2009, he was placed on paid administrative leave. D SOF ¶16. He reported back to work on December 2, 2009. Id. ¶ 17. His supervisors assigned him to 71 Thomas Street, in hopes of giving him a "fresh start" in a quieter, less stressful work environment than at 60 Centre Street. Id. ¶¶ 18-19. On the day he returned to work, he told Sergeant Terence McNulty—one of his superior officers at 60 Centre Street—that he needed a private room at 71 Thomas Street to release his tics. P SOF ¶ 21; DX 13 at 109:15-110:11. McNulty arranged for a meeting

3

that day with Castellano, who advised O'Dette that he needed to request this accommodation from his superior officers at 71 Thomas Street. D SOF ¶ 20; DX 13 at 109:15-110:11; DX 41 at 24:22-25. He told Castellano that he "wasn't going to go over [to 71 Thomas Street]" and Castellano told him to go home. DX 13 at 110:8-13.

On December 14, 2009, he submitted forms completed by his psychiatrist, Dr. Ruth Dowling-Bruun, to assist the UCS in evaluating whether he was capable of returning to work. D SOF ¶ 48. In one of the forms, Bruun stated that there were no known problems that would interfere with him returning to work so long as he had access to a separate room to release his tics. See id. ¶ 49. That same day, Fennell notified O'Dette in writing that he could not return to work. Am. Compl. ¶ 52. On September 14, 2010, the UCS filed disciplinary charges against him based on the July 8, November 5, and December 2, 2009 incidents of alleged misconduct. DX 1-2.

### III. Disciplinary Hearing

On December 12 and 13, 2011, the State of New York Office of Court Administration held a two-day disciplinary hearing before Judicial Hearing Officer ("JHO") Herbert J. Adlerberg. JHO Adlerberg issued a Report and Recommendation ("R&R"), dated February 6, 2012, which found that O'Dette had committed misconduct on all three occasions. DX 2. In particular, he found that the first two instances of misconduct—in which O'Dette cursed at a fellow Court Officer and his supervisor—were only partially attributable to Tourette's or OCD, and that O'Dette's direct refusal of Schustal's order to report to 71 Thomas Street was not attributable to O'Dette's alleged disabilities. DX 2 at 12. He reasoned that "the most important rule" governing the Court Officer position was to operate within a chain of command and that O'Dette's "intentional and steadfast refusal to report to the assignment at 71 Thomas Street . . .

4

[was] a blatant violation of that rule and can in no way be attributed to an uncontrollable tic." Id. at 13. He recommended that O'Dette's employment as a Senior Court Officer be terminated. Id. On March 6, 2012, Judge Fisher issued a Directive concurring with the R&R's findings and terminating O'Dette's employment. See DX 3.

## IV. Federal and State Proceedings

On February 29, 2012, the Equal Employment Opportunity Commission ("EEOC") issued O'Dette a right to sue letter in response to his EEOC complaint dated February 1, 2010. Am. Compl. ¶¶ 11-12. On May 29, 2012, he filed the initial Complaint in this action against the UCS alleging violations of Titles I and II of the ADA for wrongful termination and failure to accommodate, and seeking damages, a declaratory judgment, and a prospective injunction requiring the UCS to reinstate him as a court officer. Dkt. No. 1.

On July 3, 2012, O'Dette filed a petition challenging his termination with the Supreme Court of the State of New York, pursuant to Article 78 of the Civil Practice Law and Rules. See DX 4. In his petition, he argued that (1) the R&R's findings and recommendations, with which Judge Fisher concurred, were not supported by substantial evidence; and (2) "the punishment of termination was disproportionate to the offenses." See id. ¶¶ 58-63. His petition requested an order annulling the UCS' determinations and reinstating him to his position as a Senior Court Officer, along with back pay and benefits. Id. at 7. Because the New York Supreme Court did not have jurisdiction over his Article 78 proceeding, it transferred the case to the New York

Appellate Division, First Department, on July 9, 2012.  See DX 5 at 66; CPLR § 7804(g)[2].

On July 17, 2012, the UCS moved this Court to dismiss O'Dette's Complaint.  Dkt. No. 6.  On April 15, 2013, this Court dismissed the Complaint on Eleventh Amendment sovereign immunity grounds, but under the Ex Parte Young doctrine, it granted O'Dette leave to amend his complaint and replead his Title I claim to pursue injunctive relief against a responsible state official.  Dkt No. 12.  O'Dette filed his Amended Complaint on May 11, 2013, seeking only injunctive relief against Judge Fisher in her official capacity.  Dkt. No. 13.  His Amended Complaint alleges a single count under Title I of the ADA for wrongful termination and failure to accommodate his alleged disability, and seeks an injunction requiring Judge Fisher to reinstate him as a Senior Court Officer.  See id.

On May 30, 2013, the Appellate Division heard oral argument in the Article 78 proceeding, during which one justice asked the UCS' attorney, Shawn Kirby, what effect the Appellate Division's decision would have on O'Dette's pending federal action.  DX 39 ¶ 12; Certification of Ronald D. Degen ("Degen Cert.") (PX 1) ¶ 6; Reply Declaration of Shawn Kirby, Esq. ("Kirby Decl.") ¶ 10.[3][4]  According to O'Dette, Kirby responded that the court's decision would not affect the federal action and that the two cases were independent of one another.  See Degen Cert. ¶ 6.  Judge Fisher asserts that although the court noted that O'Dette had a pending federal case, the oral argument concerned

---

[2] Under CPLR § 7804(g), all Article 78 proceedings alleging that an administrative decision was not supported by "substantial evidence" must be transferred to the Appellate Division: "Where [the substantial evidence] issue is raised, the court [in which the proceeding is commenced] shall first dispose of such other objections as could terminate the proceeding . . ., without reaching the substantial evidence issue.  If the determination of the other objections does not terminate the proceeding, the court shall make an order directed that it be transferred for disposition to a term of the appellate division. . . ."
[3] The UCS' response to O'Dette's Article 78 petition included a copy of this Court's April 15, 2013 decision "for the sake of a complete procedural record."  Kirby Decl. ¶¶ 8-9.
[4] The parties disagree as to what transpired during oral argument, and a transcript of the proceeding is unavailable.  See Degen Cert; Kirby Decl.

solely whether "substantial evidence" supported his culpability and whether the termination penalty was "impermissibly shocking." See Kirby Decl. ¶ 12.

On June 20, 2013, the Appellate Division denied his petition and dismissed the proceeding after finding that "substantial evidence" supported the UCS' determination that he had engaged in misconduct, and that termination was not an inappropriate penalty. DX 5 at 66. His motion for reargument was denied, and on October 15, 2013, the New York Court of Appeals denied his motion for leave to appeal. DX at 6-7.

### V. Summary Judgment Motion

On August 15, 2014, Judge Fisher filed her Motion for Summary Judgment and supporting memorandum ("Memorandum"). Dkt. No. 44. Her motion asserts that (1) the doctrine of *res judicata* bars O'Dette's ADA claim; and (2) he cannot otherwise establish a genuine dispute of material fact to support the claim. See id. On September 15, 2014, O'Dette filed his Opposition to Judge Fisher's Motion for Summary Judgment ("Opposition"). Dkt. No. 49. Judge Fisher filed her Reply in Support of her Motion for Summary Judgment ("Reply") on October 8, 2014. Dkt. No. 50.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. . . . A fact is material if it might affect the outcome of the suit under the governing law." Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010) (internal quotations and citations omitted). The moving party bears the burden of establishing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A

7

court deciding a motion for summary judgment must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011) (quotation omitted).

## DISCUSSION

Judge Fisher first argues that summary judgment is proper because *res judicata* bars O'Dette's ADA claim. In response, O'Dette argues that the equitable doctrine of judicial estoppel precludes this defense. The Court addresses each of these issues in turn.

### I. *Res Judicata*

Judge Fisher argues that the doctrine of *res judicata*, or claim preclusion, bars O'Dette's ADA claim because it arises from the same facts as his Article 78 petition and could have been brought in New York State court. To establish *res judicata*, a party must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] as the subsequent action or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been raised, in the prior action." Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000) (internal citations omitted).

The Full Faith and Credit Clause, U.S. Const., Art. IV, § 1, requires a federal court to "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist., 465 U.S. 75, 80-81 (1984). Under New York's "transactional approach" to *res judicata* analysis, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred,

even if based upon different theories or if seeking a different remedy." Giannone v. York Tape & Label, Inc., 548 F.3d 191, 194 (2d Cir. 2008).  "[A] set of facts will be deemed a single 'transaction' for *res judicata* purposes if the facts are closely related in time, space, motivation, or origin, such that treating them as a unit would be convenient for trial and would conform to the parties' expectations." Harris v. Beth Israel Med. Ctr., No. 08-CIV-11029, 2009 WL 612498, at *7 (S.D.N.Y. Mar. 4, 2009) aff'd, 367 F. App'x 184 (2d Cir. 2010).

The first two elements of *res judicata* are clearly satisfied here:  the Article 78 proceeding was adjudicated on the merits and involved the same parties as this action. See DX 4-5.  Thus, the only question is whether the ADA claim "could have been raised" in the Article 78 proceeding.

The Second Circuit has recognized that the "could have been" language in the third element of *res judicata* is "something of a misnomer." Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001).  Indeed, "the question is not whether the applicable procedural rules *permitted* assertion of the claim in the first proceeding; rather, the question is whether the claim was sufficiently related to the claims that were asserted in the first proceeding that it *should have been* asserted in that proceeding." Id.  However, "showing that the applicable procedural rules did not permit assertion of the claim in question in the first action . . . suffices to show that the claim is not barred in the second action." Id.

Judge Fisher argues that this federal action "arises out of the same 'transactions or series of transactions' as the Article 78 proceeding that O'Dette lost in the New York State courts." Memorandum at 8.  She correctly notes that the crux of both federal and state actions is O'Dette's assertion that he was unlawfully terminated and should be

9

reinstated.  Indeed, an identical set of underlying facts gave rise to his ADA claim and Article 78 challenge:  (1) his cursing at Officer Moses in July 2009; (2) his cursing at Lieutenant Schustal in November 2009; (3) his refusal to report to his new assignment at 71 Thomas Street on December 2, 2009; (4) his unsuccessful request for an accommodation to allow him to release his tics; and (5) Judge Fisher's order affirming JHO Adlerberg's decision terminating his employment.  Compare Article 78 Petition (DX 4) ¶¶ 53-58, with Am. Compl. ¶¶ 44-53; 63-66.  Indeed, his ADA cause of action "requires the same evidence to support it and is based on facts that were also present in the [Article 78 proceeding]," and therefore, under New York's "transactional" test, the claims arise from the same factual transaction, and both should have been asserted in the prior proceeding.  See Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1997).

O'Dette argues that his Article 78 petition was automatically transferred to the New York Appellate Division, which is not a trial court and therefore could not have considered his ADA claim.[5]  Yet the applicable procedural rules did not prohibit him from bringing an ADA claim along with his Article 78 challenge—petitioners may bring a combined Article 78 petition and civil action in New York State courts, which have concurrent jurisdiction over ADA claims.  See Harris, 2009 WL 612498, at *9-10 (*res judicata* barred ADA claim because plaintiff could have raised it in New York Supreme Court); Meadows v. Robert Flemings, Inc., 290 A.D.2d 386, 387 (1st Dep't 2002) (New York State courts have concurrent jurisdiction over ADA claims); Tyson v. New York State Dep't of Correctional Servs., 198 A.D.2d 408, 408, 604 (2d Dep't 1993) (hybrid Article 78 complaint alleged disability discrimination and sought an order appointing

---

[5] His additional argument—that he could not have raised the ADA claim during the disciplinary proceeding—is irrelevant because Judge Fisher's *res judicata* argument is based on the prior New York State court litigation, not the disciplinary proceeding.

petitioner as correction officer). Had he brought a "hybrid" complaint asserting both his Article 78 and ADA causes of action, the New York Supreme Court would have been required to resolve the ADA claim before transferring the Article 78 proceeding to the Appellate Division. See CPLR § 7804(g); see also Sanon v. Wing, No. 403296/98, 2000 WL 517782, at *1 (N.Y. Sup. Ct. Feb. 25, 2000) (Supreme Court must address ADA issue in hybrid Article 78 proceeding before transferring "substantial evidence" question to Appellate Division).

O'Dette also argues that *res judicata* is inapplicable because the relief he seeks in this action was unavailable in state court. See Opposition at 22. His argument is without merit because the injunctive relief he seeks in this action—reinstatement of his employment as a Court Officer—is identical to the relief sought in his state court proceeding. See Am. Compl. at 12, ¶ A; DX 4 ¶ 2. O'Dette even concedes that as a matter of law, he cannot obtain damages in this action. DX 39 ¶ 18.

Judge Fisher has established that O'Dette could have brought his ADA claim in the previous state lawsuit, which involved the same parties and was adjudicated on the merits. Therefore, *res judicata* bars his ADA claim.

## II. Judicial Estoppel

O'Dette argues that during the Article 78 proceeding, the UCS represented that *res judicata* would not bar his ADA cause of action, and therefore Judge Fisher should be judicially estopped from asserting this defense now. See Opposition at 25. The equitable doctrine of judicial estoppel "prevents a party who secured a judgment in his favor by virtue of assuming a given position in a prior legal proceeding from assuming an inconsistent position in a later action." Maharaj, 128 F.3d at 98 (2d Cir. 1997). Judicial estoppel is designed to protect "the sanctity of the oath and the integrity of the

11

judicial process," rather than ensuring fairness between litigants. Seneca Nation of Indians v. New York, 26 F. Supp. 2d 555, 565 (W.D.N.Y. 1998). "A party invoking judicial estoppel must show that: (1) his adversary advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner." Wight v. BankAmerica Corp., 219 F.3d 79, 90 (2d Cir. 2000). Moreover, the Second Circuit "further limit[s] judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain." DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 103 (2d Cir. 2010) (internal citations omitted).

O'Dette has not established that judicial estoppel is appropriate here. First, Judge Fisher's position in this action is not inconsistent with the position that the UCS advanced in the state proceeding. Judicial estoppel is limited to situations where there is a "direct and irreconcilable contradiction between the earlier and later statements." Markus v. Teachers Ins. & Annuity Ass'n Coll. Ret. Equities Fund, No. 03 Civ. 646, 2005 WL 742635, at *4 (S.D.N.Y. Mar. 29, 2005). Furthermore, in the Second Circuit, judicial estoppel applies exclusively to inconsistent *factual* positions. See, e.g., Seneca Nation, 26 F. Supp. 2d at 565 (finding "no legal authority" to extend the doctrine of judicial estoppel to inconsistent legal positions).

Fisher's current position—that *res judicata* bars O'Dette's ADA claim—is not directly or irreconcilably contradicted by Kirby's alleged statement that the Appellate Division's decision regarding his Article 78 petition would have no effect on this action. The Article 78 proceeding addressed two issues: (1) whether "substantial evidence" supported the UCS' findings of misconduct; and (2) whether the penalty of termination was "so disproportionate as to be shocking to one's sense of fairness." See DX 6. Thus,

12

in determining whether to grant the relief O'Dette requested in his Article 78 petition, the Appellate Division had no reason to evaluate the potential application of *res judicata* in this federal action. Furthermore, even if Kirby's statement did concern the validity of *res judicata* in this action, judicial estoppel would still be inapplicable to such an inconsistent legal position. See Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38, 288 F.3d 491, 504 (2d Cir. 2002) (wavering positions regarding the ramifications of a strike upon a collective bargaining agreement were legal conclusions, not "inconsistent factual positions" that could otherwise justify judicial estoppel); rev'd on other grounds, 351 F.3d 43 (2d Cir. 2003) (per curiam).

Second, there is no evidence that the Appellate Division "adopted" Kirby's statement. Judicial estoppel is appropriate "only if the party against whom estoppel is claimed actually obtained a judgment as a result of the inconsistent position." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis, 903 F.2d 109, 114 (2d Cir. 1990). The party claiming estoppel has the burden of showing that the first court actually adopted the earlier representation. See e.g., Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc., No. 10 Civ. 1391, 2014 WL 1378115, at *5 (S.D.N.Y. Apr. 8, 2014). O'Dette has not met this burden. He merely speculates that ". . . had Defendant's counsel answered that this action would be barred by the Article 78 proceeding, the state court might have decided the case differently." Opposition at 23-24. Yet beyond this conjecture, he can point to nothing in the Appellate Division's order to suggest that the court even considered, much less adopted, Kirby's statement in deciding to dismiss his Article 78 petition. See U.S. Dep't. of Hous. & Urban Dev. v. K. Capolino Const. Corp., No. 01 Civ. 390, 2001 WL 487436, at *7 (S.D.N.Y. May 7, 2001) (defendants failed to show that court adopted

13

plaintiff's position where "nothing in the decision" indicated the court adopted the representation).

Finally, the "risk of inconsistent results with its impact on judicial integrity" is far from certain here. See Treadwell, 58 F. Supp. 2d at 93. *Res judicata* was not at issue in the earlier proceeding, and therefore Kirby's statement created no risk of inconsistent results as to the application of *res judicata* in this action. O'Dette has not shown that judicial estoppel is applicable, and the Court will not exercise its equitable power to preclude Judge Fisher from asserting *res judicata* as a defense.[6]

## CONCLUSION

For the reasons discussed above, the Court grants Judge Fisher's motion for summary judgment on *res judicata* grounds. The Clerk of Court is directed to enter judgment in favor of Judge Fisher, and to close this case.

SO ORDERED.

Dated:      Brooklyn, New York
              November 21, 2014

/s/
I. Leo Glasser
Senior United States District Judge

---

[6] Judge Fisher also argues that she is entitled to summary judgment because O'Dette cannot raise a genuine issue of material fact to support his ADA cause of action. Because the Court has determined that *res judicata* bars this action, it need not consider her other asserted ground for summary judgment.